IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

NICIE ANNE (SMITH) DILLEHAY                                    Plaintiff

v.                              4:08CV00019 JLH/HDY

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                       Defendant

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge J. Leon Holmes. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

**RECOMMENDED DISPOSITION**

Plaintiff, Nicie Anne (Smith) Dillehay, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits. Both parties have

submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable

---

[1] Plaintiff also filed an Addendum to her brief and a Response to Defendant's brief.

by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Plaintiff alleged that she was limited in her ability to work by a myriad of conditions.  (Tr. 109, 119)  On an application subsequent to the one at issue on this appeal, the Commissioner found that she was disabled within the meaning of the Social Security Act with an onset of January 16, 2004.  (Tr. 586)  On the instant application, she alleged an onset of July 15, 1999.  (Tr. 72)  Therefore, the relevant time period under consideration on this appeal is July 15, 1999, through January 15, 2004.

After conducting an administrative hearing[2] at which Plaintiff and a vocational expert testified, the Administrative Law Judge (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time during the relevant period.  On January 8, 2008, the Appeals Council declined jurisdiction, making the ALJ's decision the final decision of the Commissioner.  (Tr. 417-19)  Plaintiff then filed her complaint initiating this appeal.  (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is not supported by substantial evidence and that the case should be remanded.

---

[2]There had been a previous hearing.  (Tr. 386-416)  The denial of that application was ultimately appealed to this Court, which reversed and remanded.  Dillehay v. Barnhart, 4:05CV00142 JLH (Judgment, Aug. 22, 2006).  Plaintiff was represented by counsel at the prior hearing.  (Tr. 586)  She was pro se on the appeal of that case, as she was at the second hearing and on this appeal.

3

Plaintiff was 51 years old at the time of the most recent hearing. (Tr. 586)  She is a high school graduate with four years of college. (Tr. 115, 389, 586)  She has past relevant work as a R.N., and had worked briefly as a convenience store clerk and flower delivery person. (Tr. 100-03, 586-87)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id. at § 404.1520(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. Id. at § 404.1520(a)(4)(ii). If not, benefits are denied. Id. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. Id. at § 404.1520(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. Id., § 404.1520(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. Id.

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. Id., § 404.1520(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. Id., § 404.1520(a)(4)(iv). If so, benefits are denied. Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. Id., § 404.1520(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. Id.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 483) He found that Plaintiff had "severe" impairments of obesity, fibromyalgia, blindness of the right eye, hypertension and migraine headaches, but that she did not have an impairment or combination of impairments that met or equaled a Listing. (Tr. 483-84) He judged that Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were not totally credible. (Tr. 485)

The ALJ found that Plaintiff retained the residual functional capacity for sedentary work. (Tr. 484) He determined that she was unable to perform any of her past relevant work. (Tr. 487) Based on the testimony of a vocational expert witness in response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations, for example, office clerk. Id. Consequently, the ALJ concluded that Plaintiff was not disabled. (Tr. 488)

5

Although he found that she was unable to perform any of her past relevant work, the ALJ did not expressly acknowledge the shift in the burden as a result of that finding. That failure constitutes reversible error unless all of the evidence is so strongly against Plaintiff's position that a proper allocation of the burden would not have changed the outcome. Roberts v. Apfel, 222 F.3d 466, 471 (8th Cir. 2000); Pope v. Bowen, 886 F.2d 1038, 1040 (8th Cir. 1989). In this case, all of the evidence was not so strongly against Plaintiff's position that proper allocation of the burden would not have changed the outcome.

There is another, more serious flaw in the ALJ's decision that warrants reversal. At the conclusion of the hearing, there was discussion of the need to focus on evidence from the relevant time period:

> [ALJ[3]]: Let me go back, Ms. Dillehay, let me go back through this and look at that medical back from the earlier time. It's kind of hard not to confuse what's going on today with you and then. You said it was all getting progressively worse, which obviously it is and you're now getting your disability. The question I have to answer is whether or not back then there was anything that you could have done. And I remember your case, and I remember when you came in, I remember it a little better, but I need to go back and read that medical again and see exactly what the testimony was back then. But basically he points out in the transcript 273, 276, 280, but you were up close to 300 pounds most of that time.
>
> CLMT: There's one of the records a long time ago that does show 315.

---

[3]The transcript identifies the speaker as the claimant, but that is obviously a mistake.

6

ALJ:  Yeah, so you were up there in the high 200s or 300 or above at that time.

CLMT:   Yes.

ALJ:   So you had severe weight problems.

CLMT:   Yes.

ALJ:   Although you're fairly tall.

CLMT:   5'6".

ALJ:  We had one hearing earlier today, this girl was 4'11" and weighed 340 pounds so she wasn't carrying it near as well as you are.  But anyway it's a lot of weight, and I understand that, and I'll try to figure out what to do on it and get a decision to you.  There's not much we can do now because any medical that you come up with today although we have all the medical doesn't really help us too much.

CLMT:   The one thing that I did bring up when I submitted those papers is that because I didn't have insurance, didn't have money, there were a lot of -- we didn't have diagnoses for the problems that I was having and so I'm just now starting to see the diagnoses that existed.

ALJ:   Okay.

CLMT:  But I just didn't have the diagnoses for like sarcodosis, the [INAUDIBLE].  I've had a CT scan that shows my spleen is full of granulomas.  Those just didn't appear overnight.  You know, those would have been accumulating for years.

ALJ:   Okay.

CLMT:  So it's just a matter of knowing what's there and if you can afford -- the one thing that helps a little bit is I saw Dr. Keith Dixon when I had insurance back in 1998, and I have just start -- since I got the Medicare started back to seeing him so this is the same doctor I saw years ago so he's seen the progression.  There's one paper, I don't know if it would help you at all because this was not signed for this purpose.  This was for my student loans for the disability to try to get me from having to pay that, and Keith Dixon does sign for disability beginning in

7

'99.

    ALJ:  Okay.  We'll make that an exhibit.  We want everything that reflects on what your condition was.  Okay.  You got a big stack of papers in front of you.  Do we have all the stuff?

    CLMT:  I did not know if I was going to have to retry the case so I tried to bring everything that I thought I would need.

    ALJ:   I just want to make sure that we have -- if there's any new exhibits that even though they're fairly current if they reflect back in any way on what your condition was back before then, well, I'd like to have those.

    CLMT:  And I did mention -- I heard you mention me trying the case in federal court.  That consisted of me having a lot of help. My niece is outside now.  My whole family have copied and --

    ALJ:   Okay.  I know.  I'm not saying that that has anything to do.  I just wanted him to know that you were an intelligent, bright person and that you were educated.  It's something that we have a lot of people that are not.

    CLMT:  One of the big problems is I did without income for ten years which means I don't have a car, I don't have a home.

    ALJ:  Let me ask you this, this is important, do you have any of your current medical, I don't care if it was last week, last month, six months ago or two years ago, that might reflect on any of the problems that you had back before 2004 that I don't have?  I don't want any duplicates because if there's a bunch of duplicates it just makes it --

    CLMT:  Harder to --

    ALJ:  Right.  It just messes up your case.

    CLMT:   I do have the scan here somewhere that shows the -- CT scan showing the granulomas.

    ALJ:  If you can find that, I'll let you look for that.  If you'll give that to Ms. Copeland.

        CLMT:  Okay.

        ALJ:  She'll make it an exhibit because we do need it, and if you started seeing Dr. Dixon again has he written anything up on you?

        CLMT:  I gave her the H&P from --

        ALJ:  Okay.  I didn't have a chance to look at what was given today, but we got that.

        CLMT:  Okay.

        ALJ:  Is there anything else he - -

        CLMT:  Can you give me a minute just sitting out here going through it to give to her?

        ALJ:  Well, actually what would really be good, what would really be good if you can do this, if you could maybe go to Dr. Dixon and say could you write me a narrative report.  You treated me back in '98 and stuff like that, you knew what my condition was back then.  Now you can see me today.  Can you give us some kind of opinion on whether or not I would have been able to work back during that period of time.

        CLMT:  Okay.

        ALJ:  If he could do that, write us tying it all together since he saw you before and he's seeing you now.  It would have been better if he had seen you all along but he didn't, but if he could kind of tie the two ends together it would help me a lot.

        CLMT:  How long will I have to get that?

        ALJ:  How much time do you need?  You're already getting your disability so it's not like you're going to be doing without money.

        CLMT:   I have to get an appointment.  Sometimes it takes a while.

        ALJ:  Well, 60 days, is that going to be enough time?

        CLMT:  Okay.  Oh, yeah, that's plenty of time.

        ALJ:  Okay.  All right.  Let's do that.  Because I

9

>    want you to get a chance to get everything you feel is
>    important in here.
>
>        CLMT:  Okay, good.
>
>        ALJ:  Because I want to make the right decision.  I
>    don't want this thing to go on forever.
>
>        CLMT:  Oh, no.  No.
>
>        ALJ:  Okay?
>
>        CLMT:  Okay.
>
>        ALJ: All right.  Good luck to you, Ms. Dillehay, and
>    just get that.

(Tr. 598-603)

Keith H. Dixon, M.D., completed the summary requested by the ALJ.  (Tr. 582)  He noted that during 1998-99, Plaintiff suffered from extreme stress, fragile hypertension, morbid obesity, edema, severe pain, frequent falls with injuries, extreme exhaustion and depression.  <u>Id.</u>  Despite emphasizing the importance of such a letter during the hearing, asking Plaintiff to obtain it and leaving the record open to receive it, the ALJ did not mention the exhibit or the information it contained in his opinion.  (Tr. 481-88)  He does, however, discuss findings by several other physicians.  (Tr. 485-86)  Given the possible impact of Dr. Dixon's information on the relevant time period, it was fatal error not to discuss it.

>        . . . .
>
>        (2)  Evidence that you submit or that we obtain may
>    contain medical opinions.  Medical opinions are statements
>    from physicians and psychologists or other acceptable
>    medical sources that reflect judgments about the nature and
>    severity of your impairment(s), including your symptoms,
>    diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions.

(b) *How we consider medical opinions.* In deciding whether you are disabled, <u>we will always consider the medical opinions in your case record</u> together with the rest of the relevant evidence we receive.

(c) *Making disability determinations.* After we review all of the evidence relevant to your claim, including medical opinions, we make findings about what the evidence shows.

(1) If all of the evidence we receive, including all medical opinion(s), is consistent, and there is sufficient evidence for us to decide whether you are disabled, we will make our determination or decision based on that evidence.

(2) If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.

(3) If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

(4) When there are inconsistencies in the evidence that cannot be resolved, or when despite efforts to obtain additional evidence the evidence is not complete, we will make a determination or decision based on the evidence we have.

(d) *How we weigh medical opinions.* <u>Regardless of its source, we will evaluate every medical opinion we receive.</u> Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) *Examining relationship.*  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) *Treatment relationship.*  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. <u>We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.</u>

(i)  *Length of the treatment relationship and the frequency of examination.*  Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii)  *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.  We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain.  When the

12

treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

   (3) *Supportability*.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.  Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.  We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

   (4) *Consistency*.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

   (5) *Specialization*.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

   (6) *Other factors*.  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

      . . . .

20 C.F.R. § 404.1527 (2006) (emphasis added).

Based on these errors and the record as a whole, the Court finds that the ALJ committed legal error.  Therefore, the ruling of the

Commissioner should be reversed and the matter remanded for proper consideration of Dr. Dixon's opinion and acknowledgment of the proper allocation of the burden of production at Step 5 of the sequential evaluation process.  This would be a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991).

    IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be reversed and this case be remanded to the Commissioner for action consistent with this opinion.

    DATED this    10    day of December, 2008.


_____
UNITED STATES MAGISTRATE JUDGE