**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

NICIE ANNE (SMITH) DILLEHAY                                                                          PLAINTIFF

v.                                            No. 4:08CV00019 JLH

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION                                                                        DEFENDANT

**OPINION AND ORDER**

The issue in this Social Security appeal is whether Nicie Anne (Smith) Dillehay was disabled between July 15, 1999, and January 16, 2004.  Dillehay applied for disability benefits alleging that she was disabled beginning on July 15, 1999, but her application was denied.  She filed a second application, which was granted with an established onset of disability of January 16, 2004.  Dillehay appealed the denial of her application for disability benefits for the time period from July 15, 1999, through January 15, 2004.  This Court remanded Dillehay's claim for further consideration because the opinion of the administrative law judge was internally inconsistent and because the administrative law judge failed to consider Dillehay's obesity in conjunction with her other impairments.

On remand, a different administrative law judge conducted a second hearing, reviewed the record, and issued a second opinion denying Dillehay's claim for disability benefits for the period from July 15, 1999, through January 15, 2004.  Applying the established five-step sequential evaluation process pursuant to 20 C.F.R. § 404.1520, the administrative law judge concluded that Dillehay did not engage in substantial gainful activity during the relevant time period, that she had severe impairments including obesity, fibromyalgia, blindness of the right eye, hypertension, and migraine headaches; that her impairments or a combination of impairments did not meet or equal

one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, appx. 1 (20 C.F.R. § 404.1520(d), § 404.1525, and § 404.1526); that Dillehay had the residual functional capacity to perform sedentary work during the relevant time period; and that jobs that she could perform existed in significant numbers in the national economy.

The magistrate judge has issued proposed findings and recommended disposition. The magistrate judge has proposed that the Court should remand the case for two reasons. First, the magistrate judge says that the administrative law judge did not expressly acknowledge the shift in the burden after determining that Dillehay was unable to perform any of her past relevant work. Secondly, the magistrate judge proposes that there is a more serious flaw in the administrative law judge's decision that warrants reversal inasmuch as the administrative law judge left the record open for the receipt of a report from Keith H. Dixon, M.D., but that, after receiving the report, he made no mention of it in his opinion. After *de novo* review of the record as a whole, the Court declines to accept the recommendation of the magistrate judge and affirms the decision of the Commissioner of the Social Security Administration.

As the Commissioner notes in his brief, the administrative law judge did note the shift in the burden, contrary to the proposed finding of the magistrate judge. The opinion of the administrative law judge states:

> At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that

> demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

(Adm. R. 483.)

Although the administrative law judge did not repeat the acknowledgment of the burden shifting later in his opinion when he discussed the facts, there was no need for him to repeat what he had already said about the burden shifting.  Thus, the Court sees no error by the administrative law judge in the burden shifting at the fifth stage of the sequential evaluation.

> On the second issue, the text of Dr. Dixon's letter report states as follows:
>
> During 1998-99, per records which you have, Ms. Dillehay suffered from extreme stress, fragile hypertension at times reaching 150/120 while on medicines, morbid obesity ranging from 291-315 pounds at 5'6", edema requiring strong diuretics, and severe pain (migraines, right flank, bones, muscles, joints).  She suffered from syncope and frequent falls with injuries.  She also suffered extreme exhaustion and depression.
>
> Currently Ms. Dillehay suffers from the same problems that have exacerbated with age.  Because she now has Medicare, she has been able to obtain proper testing and has diagnoses for symptoms that she has experienced for a number of years.
>
> These conditions did not develop recently, but have been affecting her body systems over years.  For example, the multiple splenic lesions were found on a CT scan but they have been there for some time.  The same is true for the fatty liver.  Her Fibromyalgia has been present as well.  Congestive heart failure has been present but will show further development over time.
>
> We are doing further testing and monitoring and will be able to make further diagnoses as they present themselves.  I am managing Ms. Dillehay symptomatically for her severe pain, anxiety and depression, as well as treating her BP, etc.  I will treat acute episodes as they present.
>
> I have recently signed a complete disability statement for Ms. Dillehay to get a waiver so the government will cease withholding the student loan debt from her disability so she can obtain proper nutrition and medicines.

(Adm. R. 582.)

As the text of the letter shows, Dr. Dixon listed Dillehay's problems in 1998-99 and described her current condition but said nothing of consequence about Dillehay's condition between July 15, 1999, and January 16, 2004. The Court does not believe that it would serve any useful purpose to remand this case again, with directions for the administrative law judge to consider Dr. Dixon's letter because Dr. Dixon's letter says so little about Dillehay's condition during the relevant period of time.

Because the Court has decided not to remand this case, the Court must determine whether the administrative law judge's decision is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). If supported by substantial evidence, the administrative law judge's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Reynolds*, 82 F.3d at 257. In assessing whether the evidence is substantial, the Court must consider evidence that detracts from the administrative law judge's decision as well as evidence that supports it, but the Court may not reverse merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The first set of medical records pertaining to the relevant period are records from Nephrology Physicians, P.A. (Adm. R. 170-89.) Those records show that Dillehay was diagnosed in 1998 and 1999 with high blood pressure, hypothyroidism, migraine headaches, polycystic ovarian disease, a cardiovascular accident, and other ailments. They are summarized in the first paragraph of

Dr. Dixon's letter quoted above. Those records do not show that any physician advised Dillehay not to work or imposed any restrictions on her activity.

The administrative record also includes medical records from St. Vincent Infirmary from September 1998 through April 2000. (Adm. R. 192-206.) In September 1998, Dillehay had a negative renal ultrasound examination. A renal function study showed a slight decrease in renal function on the right side and slight decrease in flow curve pattern on the right kidney, with the impression of the possibility of renal vascular hypertension on the right side. The left kidney was found to function well. In October 1998, she had a normal renal arteriogram. In April 2000, a chest x-ray showed mild enlargement of the cardiac silhouette but no evidence of congestive heart failure, clear lungs, no pleural effusion or pneumothorax. The impression was borderline cardiomegaly but no acute cardiopulmonary disease.

The next set of medical records are from the University of Arkansas Medical Center covering the period from October 14, 1998, to July 4, 2000. (Adm. R. 209-16.) On October 14, 1998, Dillehay had a normal MIBG with no evidence of a tumor. She was seen in the emergency room on July 4, 2000, after a fall. She was diagnosed as having a fractured toe and hypertension.

The next medical record during the relevant period of time is an emergency room record dated November 8, 1999, from Baptist Medical Center. (Adm. R. 224-31.) Dillehay was seen on that day as a result of an automobile accident. She complained of neck pain. However, the x-ray report found no evidence of fracture or dislocation within the cervical spine. She also had a normal EKG.

The next medical records during the relevant time are from the Breckenridge Family Practice Clinic and cover the period from November 15, 1999, through November 30, 1999. (Adm. R. 233-

51.) Those records pertain to the same automobile accident that caused Dillehay to be seen at the Baptist Medical Center emergency room on November 8, 1999. The diagnosis was musculoligamentus strain involving the neck and back. She was given some office therapy and instructions for exercise at home.

The next medical records are from the Arkansas Department of Correction. Although there is some indication in the record that Dillehay spent several months in prison, the only ADC medical records in the administrative record are from April 2000 and appear to be records of the medical assessment of Dillehay at or shortly after the time that she was received into the ADC. (Adm. R. 252-72.) An examination dated April 14, 2000, shows that Dillehay had a blood pressure reading of 142/88 and weighed 286 pounds. The findings indicated that in general she looked good, was oriented times three, had a loss of vision in the right eye, and varicose veins. She was diagnosed as having hypertension, renal insufficiency, TIAs, and numerous other problems. A form dated April 14, 2000, indicates that Dillehay should be assigned a lower bunk. There is also a handwritten note that says, "No Duty," presumably indicating that she was not to be assigned to a work detail. There is also an indication that she had an enlarged thyroid.

The next medical record is from St. Vincent Doctor's Hospital and records an emergency room visit on December 30, 2000. (Adm. R. 273-77.) Dillehay reported chest pain and anxiety after being robbed at gunpoint. An x-ray showed borderline to mild heart enlargement. An EKG was normal. She was assessed as having pain and an anxiety attack. She was released with medication for the anxiety.

The next medical records are from the Baptist Health Family Clinic-West and cover the period from February 4, 2002, through April 8, 2003.[1]  (Adm. R. 279-318.)  Dillehay's initial visit to the Baptist Health Family Clinic was on February 4, 2002, when she was seen by Dr. Holly Handloser.  Physical examination found her to be alert, in no acute distress, well hydrated, well developed, and well nourished.  No significant abnormality was noticed on physical examination. Her mental status was normal, and her thinking was clear.  She weighed 239 pounds.  Her blood pressure was 150/84.  She had a normal EKG.  Her lab results also were normal.  She was assessed as having the following new problems: hypertension, benign essential; hypothyroidism NOS; migraine, classical w/o intractable migraine; and anxiety disorder, generalized.

Dillehay was next seen at the Baptist Health Family Clinic on March 11, 2002.  She weighed 246 pounds.  Her blood pressure was 130/90.  The physical examination found no significant abnormality.  She was assessed as having fatigue, hypertension, and migraine headaches.

She was next seen on May 13, 2002.  She weighed 249 pounds.  Her blood pressure was 122/82.  The physical examination showed no significant abnormality.  She was assessed as having hypertension, classic migraine, generalized anxiety disorder, seasonable allergic rhinitis, esophageal reflux, and dysmenorrhea.  It was noted that she was getting ready to graduate.

Dillehay was next seen on July 26, 2002.  She weighed 258 pounds.  Her blood pressure was 140/90.  It was noted that she had graduated from college and was in graduate school.  She had fallen on her right shoulder and showed some tenderness there but otherwise had a normal physical exam. The impressions were hypertension, migraine headaches, generalized osteoarthritis with back pain, generalized anxiety disorder, seasonal allergic rhinitis, esophageal reflux, and right shoulder pain.

---

[1] The administrative record does not include any medical records from the year 2001.

Dillehay was next seen in the Baptist Health Family Clinic by Dr. Carla Anderson on November 21, 2002. She weighed 231 pounds. Her blood pressure was 134/78. A note indicates that she had been released from prison on January 3, 2002, and was writing a book about FBI espionage. Physical examination found nothing abnormal. Assessments again were: hypertension, benign essential; hypothyroidism NOS; migraine, classical w/o intractable migraine; and anxiety disorder, generalized.

Dillehay was again seen by Dr. Anderson on January 20, 2003. She weighed 276 pounds. Her blood pressure was 134/76. The physical examination was again normal and the assessment remained unchanged. Lab results were normal.

Dillehay again saw Dr. Anderson on February 18, 2003, complaining of right knee pain. She weighed 287 pounds. Her blood pressure was 130/94. Her examination again was normal and the assessment remained unchanged.

Dillehay was seen by Dr. Anderson on April 8, 2003. She weighed 295 pounds. Her blood pressure was 150/02. The physical examination showed effusion in the right knee–bursa pain and rash over her upper extremities. The assessment included new problems of arthralgies, generalized-pain in joint, multiple sights, a minor diagnosis of fever, a minor diagnosis of rash or other nonspecific skin eruption.

The next medical records are from Dr. Torin Gray and record a visit on September 13, 2002. (Adm. R. 319-20.) Dr. Gray recorded a history and took Dillehay's vital signs but did not examine her. She weighed 265 pounds. Her blood pressure was 138/90.

The next medical records are emergency room records from Baptist Medical Center dated November 12, 2002. (Adm. R. 321-29.) Dillehay was diagnosed as having a headache and

medication withdrawal, after being taken off Xanax. The physical examination was substantially normal, although Dillehay's blindness in her right eye was noted. Laboratory results indicated "no acute disease process." She had a normal CT of the brain. She was given some Xanax, which resulted in improvement, and released.

The next record is a report dated February 19, 2003, by Dr. Michael J. Webber, an orthopaedic doctor to whom Dr. Anderson had referred Dillehay as a result of a problem with her right knee. Dillehay weighed 280 pounds. She was walking with a cane, partial weight bearing on the right. Dr. Webber recommended that she get an MRI, but noted that unfortunately she was uninsured. (Adm. R. 330.)

On April 16, 2003, Dr. Robert Sedaros of the UAMS Orthopaedic Surgery Clinic completed a certification form for issuance of a special license plate for certification for the disabled in which he checked boxes to indicate that Dillehay could not walk 100 feet without stopping to rest and could not walk without the use of a brace, cane, crutch, or other assistive device. (Adm. R. 467.)

On May 29, 2003, Dr. Anderson completed a medical assessment of the ability to do work-related activities. (Adm. R. 331-34.) Dr. Anderson completed the form checking that Dillehay could not lift or carry any weight, not even weights less than five pounds; that she could stand or walk less than an hour during an eight hour work day; that she could sit less than an hour during an eight hour work day; that she should avoid reaching overhead, reaching shoulder high, handling five pounds or under, handling over five pounds, fine manipulation of small screws, fine manipulation of typing and working a cash register, and sensation of hot and cold; that she should avoid working around dangerous machinery and working at heights; and that she should avoid every environmental limitation written on the form. Dr. Anderson hand wrote that Dillehay had been unable to work full-

time since 1998. On the other hand, she checked a box to indicate that Dillehay would miss one day or less out of a month of working full time. She noted that Dillehay had been seen in her clinic since February 2002.

The next record is a report from Dr. Cliff Clifton dated August 28, 2003. Dr. Clifton first saw Dillehay in 1990 and last saw her in 1996. He noted that on both occasions she had 20/200 vision in the right eye. In 1990 she had 20/20 vision in her left eye; in 1996 it was 20/25. (Adm. R. 335.)

The next record is a state agency development worksheet and assessment. (Adm. R. 336-58.) The assessment was conducted by Dr. R.W. Beard on November 11, 2002, and appears to be based on the medical records rather than on a physical examination. The assessment opined that Dillehay could occasionally lift 20 pounds, could frequently lift 10 pounds, could stand or walk with normal breaks for a total of six hours out of an eight hour day, could sit with normal breaks for a total of six hours in an eight hour day, had no limitations on her ability to push or pull, had no postural limitations, had no manipulative limitations, had no visual limitations, had no communicative limitations, and had no environmental limitations.

The next records are emergency/outpatient medical records from Southwest Regional Medical Center for June 2, 2003, and June 3, 2003. (Adm. R. 359-77.) Dillehay complained of chest pain and was found to have an irregular heartbeat and a borderline enlarged heart, but otherwise no abnormality was found.

Dillehay was evaluated by the Little Rock Cardiology Clinic on November 11, 2003. (Adm. R. 378-80.) She was found to have PVCs (premature ventricular contractions), symptomatic;

hypertension; morbid obesity; questionable history of syncope; and possible renovascular hypertension.

Dillehay was seen at the Department of Internal Medicine at UAMS on December 5, 2003, on referral from Dr. Anderson for a work-up for lupus. (Adm. R. 381-82.) The physical examination described her as "a well developed, very obese woman who appears healthy." She weighed 283 pounds. Her blood pressure was 161/104. The conclusion was that she had fibromyalgia syndrome but not lupus.

Dillehay was again seen at the Little Rock Cardiology Clinic on February 18, 2004. (Adm. R. 383-85.) She weighed 285 pounds and had a blood pressure reading of 118/94. The impressions were tachycardia, elevated blood pressure, chest discomfort, and hypertension. She was found to have the following conditions: mild concentric left ventricular hypertrophy with normal ejection fraction and wall motion at rest; dilated aortic route; trace mitral regurgitation; cardiac Doppler evidence of left ventricular diastolic dysfunction; and trace tricuspid regurgitation.

These are all of the medical records in the administrative record describing Dillehay's condition during the relevant period of time. There are other medical records predating and postdating the relevant period of time, and the Court has reviewed them.

Dillehay's past work experience was as a nurse. During the relevant period of time, her impairments were sufficiently severe to preclude her from being able to work as a nurse, as the administrative law judge found. However, based on a review of all of the medical records, the Court cannot say that the finding of the administrative law judge that Dillehay could do sedentary work between July 15, 1999, and January 15, 2004, was unsupported by substantial evidence. The administrative law judge took into account Dillehay's obesity, as directed, but still found that she

could perform sedentary work. Dr. Carla Anderson completed a form indicating that Dillehay could not do sedentary work, but Dr. Anderson's answers on that form are inconsistent with one another and inconsistent with the medical records, as the administrative law judge correctly noted. Dillehay was born in 1956, so she was between 43 and 48 years of age during the relevant period. During the period of time in question, Dillehay graduated from college and attended graduate school. Although Dillehay has alleged that her memory was impaired due to strokes, there was no evidence of mental limitations in the medical records during the relevant period of time. She was blind in one eye, but not blind in the other. Based on the opinion given by the vocational expert, there were semi-skilled jobs in the economy that could be performed by a person with Dillehay's limitations. After a thorough review of the entire file, the Court finds no basis for reversing the decision of the administrative law judge.

## CONCLUSION

For the reasons stated hereinabove, the decision of the Commissioner of the Social Security Administration finding that Dillehay was not disabled during the period from July 15, 1999, through January 15, 2004, is affirmed. Dillehay's complaint is dismissed with prejudice.

IT IS SO ORDERED this 8th day of January, 2009.

*/s/ J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE